```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
SHARDHEEM "SHARDY" NIEVES,

                            Plaintiff,
        - against -
                                                          COMPLAINT AND
THE CITY OF NEW YORK, a municipal entity; Former          DEMAND FOR A JURY
New York City Police Department Commissioner JAMES        TRIAL
P. O'NEILL, and JOHN DOES 1–7, officers, employees,
and agents of the NYPD,

                            Defendants.
------------------------------------------------------------------------ X
```

Plaintiff Shardheem "Shardy" Nieves, through his attorneys at Beldock Levine & Hoffman LLP, allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Shardheem "Shardy" Nieves brings this civil rights action pursuant to 42 U.S.C. § 1983 to vindicate his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. On April 20, 2019, at the direction of Former New York City Police Department ("NYPD") Commissioner James P. O'Neill, NYPD officers—unconstitutionally and without any legal basis—arrested Mr. Nieves in retaliation for the First Amendment-protected activity of organizing a memorial ride for a bicycle messenger killed by a truck driver and for criticizing the NYPD's response to cyclists killed by drivers on the streets of New York City ("NYC"), and to restrain him from throwing another bike ride and further criticizing the NYPD, depriving Mr. Nieves of his constitutional rights. Furthermore, the direction to arrest Mr. Nieves, and the arrest of Mr. Nieves, was based on impermissible race-based considerations, in violation of the Fourteenth Amendment.

1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)–(4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the United States Constitution.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because Mr. Nieves's claim arose in the Southern District of New York.

5. An award of attorney's fees and costs is authorized pursuant to 42 U.S.C. § 1988.

**PARTIES**

6. Plaintiff Shardheem "Shardy" Nieves was at all times relevant to this action a resident of Kings County in the State of New York.

7. Defendant The City of New York (the "City") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement, and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of a police force and the employment of police officers because those risks attach to the public consumers of the services provided by the NYPD.

8. Defendant Former NYPD Commissioner James P. O'Neill was, at all relevant times, the Commissioner of the NYPD. Former Commissioner O'Neill is being sued in his individual capacity.

9. Defendant John Doe 1 was, at all relevant times, an officer, employee, and agent of the NYPD. Defendant John Doe 1 was a roughly 200 pound, 5'8" man of unknown ethnicity, who, upon information and belief, was assigned to either the Strategic Response Group ("SRG"), NYPD Patrol Borough Manhattan South ("Manhattan South"), or 9th Precinct, and held the rank

2

of Police Officer or lower.

10. Defendant John Doe 2 was, at all relevant times, an officer, employee, and agent of the NYPD. Defendant John Doe 2 was a roughly 160 pound, 5'9" Asian American/Pacific Islander ("AAPI") man, who, upon information and belief, was assigned to the SRG, Manhattan South, or 9th Precinct, and held the rank of Lieutenant or higher.

11. Defendant John Doe 3 was, at all relevant times, an officer, employee, and agent of the NYPD. Defendant John Doe 3 was a roughly 180 pound, 5'8" Caucasian man, who, upon information and belief, was assigned to either the SRG, Manhattan South, or 9th Precinct, and held the rank of Police Officer or lower.

12. Defendant John Doe 4 was, at all relevant times, an officer, employee, and agent of the NYPD. Defendant John Doe 4 was a roughly 200 pound, 5'8" AAPI man, who, upon information and belief, was assigned to either the SRG, Manhattan South, or 9th Precinct, and held the rank of Police Officer or lower.

13. Defendant John Doe 5 was, at all relevant times, an officer, employee, and agent of the NYPD. Defendant John Doe 5 was a roughly 160 pound, 5'10" Black man, who, upon information and belief, was assigned to either the SRG, Manhattan South, or 9th Precinct, who held the rank of Police Officer or lower.

14. Defendant John Doe 6 was, at all relevant times, an officer, employee, and agent of the NYPD. Defendant John Doe 6 was a roughly 160 pound, 5'8" Black man, who, upon information and belief, was assigned to either the SRG, Manhattan South, or 9th Precinct, and held the rank of Police Officer or lower.

15. Defendant John Doe 7 was, at all relevant times, an officer, employee, and agent of the NYPD. Defendant John Doe 7 was a roughly 180 pound, 6'2" Caucasian man, who, upon

information and belief, was assigned to either the SRG, Manhattan South, or 9th Precinct, and held the rank of Lieutenant or higher.

16. John Does 1–7 are sued in their individual capacities and will be collectively referred to in this Complaint as the "Individual Officer Defendants."

17. The true and complete names, rank, and shield numbers of Defendant Does are not currently known. However, they were employees or agents of the NYPD on the date of the incident. Accordingly, they may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. Nieves intends to name said officers as Defendants in an amended pleading once their true and complete names, ranks, and shield numbers become known and (b) that the Law Department should immediately begin preparing their defense(s) in this action.

18. At all relevant times, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, and employees of the City of New York, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the City of New York at all relevant times, with the power and authority vested in them as officers, agents, and employees of the City of New York.

19. The individual Defendants' acts complained of below were carried out intentionally, recklessly, with malice, and in gross disregard for Plaintiff's rights.

20. At all relevant times, the individual Defendants were engaged in joint ventures, assisting each other in performing the various actions described herein, and lending their physical presence and support and the authority of their offices to one another.

**FACTS**

21. On February 28, 2019, bicycle messenger Aurilla Lawrence was struck and killed by truck driver while riding her bicycle near the intersection of Broadway and Rodney streets in Brooklyn, New York.

22. Three days later, Plaintiff Mr. Nieves organized and participated in a memorial ride for Ms. Lawrence.

23. Mr. Nieves also spoke out about the NYPD's response to Aurilla's death and the deaths of other cyclists over the years.

24. Mr. Nieves criticized the NYPD for—in response to cyclists being killed by drivers—setting up ticket traps for cyclists.

25. Mr. Nieves is a Black man and the other participants in the memorial ride were majority non-white.

26. The memorial ride and Mr. Nieves's criticism of the NYPD's response to cyclists' deaths were covered by local press.

27. Mr. Nieves's criticism of the NYPD was quoted in the local press coverage, with those quotes directly attributed to Mr. Nieves.

28. Defendant Former NYPD Commissioner James P. O'Neill learned about the memorial ride and Mr. Nieves's criticism of the NYPD, as evidenced by the fact that Defendant O'Neill later referenced the memorial ride and media of the ride in public statements that were covered by local press.

29. Over the next month, Mr. Nieves publicly promoted another bicycle ride he was organizing that was scheduled to take place on April 20, 2019, starting at roughly 4:20 p.m., at Tompkins Square Park.

30. In retaliation for Mr. Nieves's First Amendment-protected activity of organizing the memorial ride and criticizing the NYPD, and to prevent Mr. Nieves from throwing another ride and further criticizing the NYPD, Defendant O'Neill ordered officers to go to Tompkins Square Park and arrest Mr. Nieves before the bicycle ride started.

31. On Defendant O'Neill's orders, the Individual Officer Defendants went to Tompkins Square Park on April 20, 2019, and arrested Mr. Nieves at approximately 4:20 p.m., before the bicycle ride started.

32. Mr. Nieves was purportedly arrested pursuant to a warrant for an unpaid open container ticket allegedly issued to Mr. Nieves on Bruckner Boulevard in the Bronx in 2015.

33. That warrant, however, was either fabricated, based on deliberately false information, or used against Mr. Nieves even though it did not pertain to Mr. Nieves.

34. Mr. Nieves never received a ticket for an open container in the Bronx in 2015.

35. All of the Defendants were aware that the warrant was invalid as to Mr. Nieves and that Mr. Nieves was being arrested in retaliation for his First Amendment-protected activity of organizing the memorial ride and criticizing the NYPD, and to restrain him from throwing another bicycle ride and further criticizing the NYPD.

36. Other people who arrived to participate in the April 20, 2019 ride were ticketed for not having bells on their bicycles, even though they were not riding them at the time.

37. Some of them had their bicycles confiscated for not having bells, even though they were not riding them at the time.

38. Defendant Former Commissioner O'Neill later admitted that the bike bell enforcement was a "tool" to prevent the ride from occurring.

39. The NYPD does not similarly crack down on other group bicycle rides—arresting

their organizers and confiscating participants' bicycles for not having bells—when the majority of the participants in those rides are white, even when those rides are nearly identical in size, lawfulness, and every other material respect. For example, the monthly Central Park Moonlight ride.

40. After arresting Mr. Nieves on the invalid warrant, Individual Officer Defendants transported Mr. Nieves to the 9th Precinct.

41. Individual Officer Defendants then transferred Mr. Nieves to a courthouse in the Bronx, where he was held before seeing a judge.

42. Mr. Nieves then appeared before a judge, who promptly released Mr. Nieves without requiring Mr. Nieves to pay a fine or suffer any other penalty.

43. Mr. Nieves was unlawfully seized and held in Defendant City's custody for approximately hours from the time of his arrest until his release.

44. Mr. Nieves was released without any charges, and was never charged with any crime or violation stemming from his arrest.

45. Former Commissioner James P. O'Neill's order to arrest Mr. Nieves, and the Individual Officer Defendants' arrest of Mr. Nieves, were an unreasonable seizure and an act of retaliation for Mr. Nieves's First Amendment-protected criticism of the NYPD's response to cyclists being killed by drivers on the streets of NYC.

## CLAIM FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983 – Fourth Amendment False Arrest
### (Against All Defendants)

46. Mr. Nieves incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully restated and realleged here.

47. Defendants, under color of state law, subjected Mr. Nieves to the foregoing acts and omissions, thereby depriving Mr. Nieves of his Fourth Amendment right to be free from false arrest.

### COUNT II
### 42 U.S.C. § 1983 – First Amendment Retaliation
**(Against All Defendants)**

48. Mr. Nieves incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully restated and realleged here.

49. Defendants, under color of state law, subjected Mr. Nieves to the foregoing acts and omissions, thereby depriving Mr. Nieves of his First Amendment right to be free from retaliation for First Amendment-protected activity.

### COUNT III
### 42 U.S.C. § 1983 – First Amendment Prior Restraint
**(Against All Defendants)**

50. Mr. Nieves incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully restated and realleged here.

51. Defendants, under color of state law, subjected Mr. Nieves to the foregoing acts and omissions, thereby placing a prior restraint on his ability to exercise his First Amendment rights.

### COUNT IV
### 42 U.S.C. § 1983 – Fourteenth Amendment Equal Protection
**(Against All Defendants)**

52. Mr. Nieves incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully restated and realleged here.

53. Defendants, under color of state law, subjected Mr. Nieves to the foregoing acts and omissions, thereby depriving Mr. Nieves of his Fourteenth Amendment right to equal

protection under the laws.

## COUNT V
### 42 U.S.C. § 1983 – Denial Of Constitutional Right To Fair Trial
**(Against All Defendants)**

54. Mr. Nieves incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully restated and realleged here.

55. Defendants created false evidence against Mr. Nieves.

56. Defendants forwarded false evidence to prosecutors in the District Attorney's office.

57. In creating false evidence against Mr. Nieves, and in forwarding false information to prosecutors, Defendants violated Mr. Nieves's right to a fair trial under the Due Process Clause of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

58. As a direct and proximate result of this unlawful conduct, Mr. Nieves sustained the damages alleged above.

## COUNT VI
### 42 U.S.C. § 1983 – Malicious Abuse Of Process
**(Against All Defendants)**

59. Mr. Nieves incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully restated and realleged here.

60. Defendants issued legal process to place Mr. Nieves under arrest.

61. Defendants arrested Plaintiff in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their harassment and intimidation of Plaintiff.

62. Defendants acted with intent to do harm to Mr. Nieves without excuse or justification.

63. In doing so, Defendants violated Mr. Nieves's rights to due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

64. As a direct and proximate result of this unlawful conduct, Mr. Nieves sustained the damages alleged above.

## COUNT VII
## LIABILITY OF THE CITY OF NEW YORK FOR CONSTITUTIONAL VIOLATIONS
### (Against the City of New York)

65. Mr. Nieves incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully restated and realleged here.

66. At all times material to this Complaint, Defendant City had de facto policies, practices, customs, and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

67. At all times material to this complaint, Defendant City failed to properly train, screen, supervise, or discipline its employees and police officers, including the individual Defendants and failed to inform the individual Defendant's supervisors of their need to train, screen, supervise, or discipline the individual Defendants.

68. The policies, practices, customs, and usages, and the failure to properly train, screen, supervise, or discipline, were a direct and proximate cause of the unconstitutional conduct alleged in this Complaint, causing injury and damage in violation of Mr. Nieves's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

69. As a result of the foregoing, Mr. Nieves was deprived of liberty, suffered emotional distress, humiliation, costs and expenses, and was otherwise damaged and injured.

**JURY DEMAND**

Mr. Nieves demands a trial by jury in this action on each and every one of his damages claims.

**PRAYER FOR RELIEF**

Plaintiff demands judgment against all Defendants, individually and jointly, and prays for the following relief:

(a) That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation;

(b) That he be awarded punitive damages against the individual Defendants;

(c) That he be compensated for the attorneys' fees, costs, and disbursements of this action; and

(d) For any further or different relief the Court may deem just and proper.

Dated: December 1, 2022
New York, New York

Respectfully submitted,

BELDOCK LEVINE & HOFFMAN LLP

By: _____
David B. Rankin
Keegan Stephan
99 Park Avenue, PH/26th Fl.
New York, New York 10016
(212) 277-5825
drankin@blhny.com
kstephan@blhny.com