UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARDHEEM "SHARDY" NIEVES,

                Plaintiff,

-against-

THE CITY OF NEW YORK, JAMES P. O'NEILL, *Former New York City Police Department Commissioner*, and JOHN DOES 1–7, *Officers, Employees, and Agents of the NYPD*,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/29/2024

22-cv-10204 (MKV)

**OPINION & ORDER GRANTING MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Shardeem Nieves asserts a host of claims, alleging that he was unjustly arrested for organizing a "memorial" bicycle ride after a cyclist was killed and for criticizing the response of the New York Police Department ("NYPD") to the deaths of cyclists. However, Plaintiff was arrested pursuant to a facially valid arrest warrant, which fact is fatal to most of his claims, and he fails to plausibly allege facts to sustain his other claims. Defendants move to dismiss, and that motion is GRANTED.

## I. BACKGROUND[1]

### A. Facts

    In February 2019, a bicycle messenger was "struck and killed by a truck driver." AC ¶ 21. A few days later, Plaintiff "organized and participated in a memorial ride for [her]." AC ¶ 22. He "also spoke out about the NYPD's response to [her] death and the deaths of other cyclists over the

---

[1] The facts are taken from the Amended Complaint [ECF No. 18 ("AC")]. The Court also considers the arrest warrant and summons, which Plaintiff did not attach to the Amended Complaint but are incorporated by reference and are public records of which the Court may take judicial notice on a motion to dismiss [ECF Nos. 20-1 ("Warrant"), 20-2 ("Summons")]. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

1

years." AC ¶ 23.  Plaintiff "is a Black man and the other participants in the memorial ride were majority non-white." AC ¶ 25.

"The memorial ride and [Plaintiff's] criticism of the NYPD's response to cyclists' deaths were covered by local press." AC ¶ 26; see AC ¶ 27.  "Defendant Former NYPD Commissioner James P. O'Neill learned about the memorial ride and [Plaintiff's] criticism of the NYPD." AC ¶ 28.  O'Neill "later referenced the memorial ride . . . in public statements." AC ¶ 28.

Plaintiff "publicly promoted another bicycle ride he was organizing that was scheduled to take place on April 20, 2019, starting at roughly 4:20 p.m., at Tompkins Square Park." AC ¶ 29.  However, Plaintiff alleges, "O'Neill ordered officers to . . . arrest [him] before the bicycle ride started." AC ¶ 30.

Plaintiff was then "arrested pursuant to a warrant for failing to appear on an open container summons allegedly issued to Mr. Nieves on Bruckner Boulevard in the Bronx in 2015." AC ¶ 32.  According to Plaintiff: "That summons and/or warrant, however, were either fabricated, based on deliberately false information, or used against Mr. Nieves even though they did not pertain to Mr. Nieves.  That is clear because Mr. Nieves never received a summons for an open container in the Bronx in 2015." AC ¶¶ 33–34.  Plaintiff concludes that Defendants arrested him in retaliation for "organizing the memorial ride and criticizing the NYPD, and to restrain him from throwing another bicycle ride and further criticizing the NYPD." AC ¶ 35.

Plaintiff alleges that "other people who arrived to participate in the April 20, 2019 ride were ticketed for not having bells on their bicycles." AC ¶ 38.  Plaintiff further alleges that O'Neill "directly ordered" this "crackdown" and "later admitted that the bike bell enforcement was a 'tool' to prevent the ride from occurring." AC ¶¶ 40–41.  Plaintiff alleges that "[t]he NYPD does not

similarly crack down on other group bicycle rides . . . when the majority of the participants in those rides are white," such as "the monthly Central Park Moonlight ride." AC ¶ 42.

Plaintiff alleges that, after his arrest, he "appeared before a judge, who promptly dismissed the underlying warrant as facially insufficient." AC ¶ 48.

### B. Procedural History

Plaintiff initiated this action by filing a complaint [ECF No. 1]. Defendants responded with a pre-motion letter seeking leave to file a motion to dismiss [ECF No. 13]. The Court issued an Order granting Defendants leave to file a motion to dismiss and granting Plaintiff leave to amend his pleading, in advance of that motion, in response to deficiencies raised in Defendants' pre-motion letter [ECF No. 15]. In that Order, the Court warned: "This will be Plaintiff's last opportunity to amend in response to arguments raised in the pre-motion letters." Plaintiff then filed the Amended Complaint [ECF No. 18].

In the Amended Complaint, Plaintiff asserts seven claims for relief. First, he asserts a claim for false arrest. AC ¶¶ 53–54. Second, he asserts a claim for First Amendment Retaliation. AC ¶¶ 55–56. Third, he asserts a claim for First Amendment Prior Restraint. AC ¶¶ 57–58. Fourth, he asserts a Fourteenth Amendment Equal Protection claim. AC ¶¶ 59–60. Fifth, Plaintiff alleges that Defendants "created false evidence" against him and thereby violated his constitutional right to a fair trial. AC ¶¶ 61–65. Sixth, he asserts a claim for malicious abuse of process. AC ¶¶ 66–71. Seventh and finally, Plaintiff asserts a claim for municipal liability. AC ¶¶ 72–76.

Defendants filed a motion to dismiss the Amended Complaint [ECF Nos. 19, 20, 20-1 ("Warrant"), 20-2 ("Summons"), 21 ("Def. Mem.")]. Plaintiff filed an opposition [ECF No. 22 ("Pl. Opp.")]. Defendants filed a reply brief, a corrected version of their reply brief, and a letter

requesting that the Court consider the corrected version [ECF Nos. 23, 24, 25].

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  The Court must "accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor." *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).  However, the Court need not accept mere conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).  Even on a motion to dismiss, the Court is not required to accept assertions that are "contradicted by . . . documentary evidence" deemed part of the pleading. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *see Chambers*, 282 F.3d at 153.

## III. DISCUSSION

### A. Plaintiff Fails To State a Claim for False Arrest.

Plaintiff asserts a claim, pursuant to 42 U.S.C. § 1983, for false arrest in violation of the Fourth Amendment. *See* AC ¶¶ 53–54.  Defendants argue this claim should be dismissed because Plaintiff was arrested pursuant to a warrant, and the Court need not credit his wholly conclusory assertions that the arrest warrant and summons were "either fabricated," or "based on deliberately false information." AC ¶ 33; *see* Def. Mem. at 6.  Defendants are correct.

A Section 1983 claim for false arrest rests on the Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  To state a claim, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not

consent to the confinement, and (4) the confinement was not otherwise privileged." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (brackets omitted) (quoting *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021)). An arrest is "privileged" when an arresting officer has probable cause to arrest. *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003); *see Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

In other words, the existence of probable cause "is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Furthermore, "the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause." *Id.*; *see Mara v. Rilling*, 921 F.3d 48, 73 (2d Cir. 2019) (an arrest pursuant to a warrant is presumed to be supported by probable cause). Indeed, an open "warrant is a judicial mandate to an officer to . . . make an arrest, and the officer has a sworn duty to carry out its provisions." *Utah v. Strieff*, 579 U.S. 232, 240 (2016) (quoting *United States v. Leon*, 468 U.S. 897, 920, n.21 (1984)).

Plaintiff first argues at length that the Court should disregard the copies of the arrest warrant and summons Defendants have submitted [ECF Nos. 20-1 ("Warrant"), 20-2 ("Summons")]. *See* Pl. Opp. at 6–9. Despite Plaintiff's arguments, there is no doubt that the Court may consider these documents. *See Salamone v. United States*, 618 F. Supp. 3d 146, 151 (S.D.N.Y. 2022) (on a motion to dismiss, "[t]he Court may also consider documents incorporated by reference into the complaint

5

and public records such as arrest warrants"). The Warrant and Summons are incorporated into the Amended Complaint by reference because the pleading makes "a clear, definite and substantial reference to" these documents. *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020); *see Chambers*, 282 F.3d at 153. Indeed, the Amended Complaint makes at least five clear references to these documents. AC ¶¶ 32, 33, 35, 46, 48; *see* AC ¶ 37.

In any event, on a motion to dismiss, the Court may take judicial notice of public records. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) ("[R]elevant matters of public record" are susceptible to judicial notice). Such records include a warrant and summons. *See Debellis v. Schmoke*, No. 19-cv-07834 (PMH), 2021 WL 38262, at *1 n.3 (S.D.N.Y. Jan. 5, 2021) ("the Court takes judicial notice of the Arrest Warrant and considers it on this motion [to dismiss]"); *Rosado v. Village of Goshen*, No. 16-cv-6916 (NSR), 2019 WL 1437522, at *3 (S.D.N.Y. Mar. 31, 2019); *Johnson v. City of New York*, No. 15-cv-8195 (GHW), 2017 WL 2312924, at *2 n.2 (S.D.N.Y. May 26, 2017) ("The Court takes judicial notice of the state arrest warrant as a public record."); *Awelewa v. New York City*, No. 11-cv-778 (NRB), 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012). Thus, the Court takes judicial notice of the Warrant and Summons.

As noted above, a plaintiff asserting a claim for false arrest has the burden to allege that an arrest was "not . . . privileged." *Kee*, 12 F.4th at 158. Here, Plaintiff alleges that he was "arrested pursuant to a warrant for failing to appear on an open container summons." AC ¶ 32. An arrest pursuant to a warrant is presumed to be supported by probable cause and, therefore, privileged. *See Mara*, 921 F.3d at 73; *Jocks*, 316 F.3d at 135.

According to Plaintiff, he can, nevertheless, sustain a false arrest claim because he asserts in the Amended Complaint that the "summons and/or warrant . . . were either fabricated," or "based on deliberately false information." AC ¶ 33. In support of that conclusory assertion, Plaintiff

6

alleges only that he "never received a summons for an open container in the Bronx in 2015." AC ¶ 34. However, accepting as true the factual allegation that Plaintiff never received the summons does not, by itself, permit a "reasonable inference[,]" *Ofori-Tenkorang*, 460 F.3d at 298, that the "summons and/or warrant . . . were either fabricated," or "based on deliberately false information," AC ¶ 33. The Court is not required to accept a purely conclusory assertion that is not supported by factual allegations. *See Whiteside v*, 995 F.3d at 321.

Plaintiff further contends that he rebuts the presumption of probable cause for his arrest because he alleges that "the judge who arraigned him ultimately found that the arrest warrant was facially invalid." Pl. Opp. at 9 (citing *Vasquez v. Reilly*, No. 15-cv-9528 (KMK), 2017 WL 946306, at *7 (S.D.N.Y. Mar. 9, 2017)); *see* AC ¶ 48. Ironically, while insisting that the Court should ignore the Warrant and Summons, Plaintiff urges the Court to consider "a transcript that Defendants submitted" of the proceeding vacating the warrant and dismissing the case against Plaintiff [ECF No. 13-1 ("Tr.")]. Pl. Opp. at 9. While Plaintiff asserts that the judge "found that the arrest warrant was facially invalid," the transcript reflects that the judge merely granted a motion to "vacate it and dismiss" without making specific findings. Tr. at 2:13.

In any event, Plaintiff asserts a Section 1983 claim for violation of a federal constitutional right. As the Supreme Court has explained, the question here is whether the arrest was "pursuant to a warrant conforming . . . to the requirements of the Fourth Amendment." *Baker v. McCollan*, 443 U.S. 137, 144 (1979). In this context, facial invalidity "mean[s] that a reasonable police officer can look at the face of the warrant and see that it cannot be enforceable—like a warrant signed by Judge Santa Claus, or issued out of the Supreme Court of Heaven." *Johnson v. Darby*, 142 F. Supp. 3d 275, 279 (E.D.N.Y. 2015), *aff'd sub nom. Johnson v. Dobry*, 660 F. App'x 69 (2d Cir. 2016). "Nothing like that happened here." *Id.*

7

The Warrant is facially valid. In *Johnson v. Dobry*, the Second Circuit upheld dismissal of a false arrest claim, despite the plaintiff's assertion that the warrant for his arrest was invalid and "the fact" that a "Court in New Jersey" later "vacated" it. *Johnson*, 142 F. Supp. 3d at 278; *see Johnson*, 660 F. App'x at 71. The same result is appropriate in this case. *See also, e.g.*, *Salamone*, 618 F. Supp. 3d at 152; *Rosado*, 2019 WL 1437522, at *8 & n.8; *Bryant v. Rourke*, 2017 WL 1318545, at *5 (E.D.N.Y. Feb. 8, 2017), *report and recommendation adopted*, 2017 WL 1317009 (E.D.N.Y. Mar. 17, 2017).

Plaintiff relies on a single district court case that does not support his position. *See* Pl. Opp. at 9 (citing *Vasquez v. Reilly*, 2017 WL 946306, at *7). In *Vasquez*, the district court explained that, since the plaintiff in that case was arrested "pursuant to an arrest warrant, [he could] rebut the presumption of probable cause and state a claim only if he allege[d] *facts* suggesting that the arrest warrant was facially invalid or that it was procured through fraud, perjury, or the misrepresentation or falsification of evidence." *Vasquez*, 2017 WL 946306, at *7 (emphasis added). The court then dismissed the false arrest claim because the plaintiff in that case "offered no facts suggesting that the arrest warrant was procured by fraud, misrepresentation, or falsification of evidence." *Id*. Here, the Warrant bears "no facial irregularity," *Johnson*, 142 F. Supp. 3d at 278, and Plaintiff offers no "facts" to support the conclusion that it "was procured by fraud, misrepresentation, or falsification of evidence," *Vasquez*, 2017 WL 946306, at *7. As such, Plaintiff fails to state a Section 1983 claim for false arrest.

**B. Plaintiff Fails To State a Claim for First Amendment Retaliation.**

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."

8

*Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  Crucially, for a First Amendment retaliatory arrest claim, a plaintiff generally must plead "the absence of probable cause."  *Nieves v. Bartlett*, 587 U.S. --- , 139 S. Ct. 1715, 1723, 204 L. Ed. 2d 1 (2019).

A "narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so," however.  *Id*. at 1727.  "In such cases, an unyielding requirement to show the absence of probable cause could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'"  *Id.* (quoting *Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87, 99 (2018)).  The exception to "the no-probable-cause requirement" applies when "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Nieves*, 139 S. Ct. at 1727.

Plaintiff here does not plead the absence of probable cause.  Rather, as discussed above, his arrest "pursuant to a warrant," AC ¶ 32, establishes the presumption of probable cause, *see Mara*, 921 F.3d at 73.  This circumstance "generally" suffices to "defeat a retaliatory arrest claim." *Nieves*, 139 S. Ct. at 1727.

Plaintiff contends that he "still has a viable First Amendment retaliation claim" because, he asserts, "police officers and particularly NYPD Commissioners do not 'typically exercise their discretion' to pull four-year-old warrants . . . for open containers."  Pl. Opp. at 12.  Plaintiff urges the Court to draw on its "common sense" to rule that his arrest fits within the exception to the no-probable-cause requirement.  Pl. Opp. at 12 (quoting *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022)).  However, as the Supreme Court explained, the exception applies when the plaintiff makes a showing that "he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Nieves*, 139 S. Ct. at 1727.  The Court

9

cannot rule that, as a matter of common sense, NYPD officers "typically exercise their discretion" not to arrest someone, *id.*, when there is an open warrant for his arrest for "failing to appear" on a summons, AC ¶ 32.

Furthermore, it is far from clear that the "narrow" exception the Supreme Court articulated in *Nieves* applies when an arrest warrant has issued. *Nieves*, 139 S. Ct. at 1727. That exception applies when officers have probable cause to arrest "but typically exercise their discretion not to do so," such as when officers watch someone "jaywalking at . . . intersection." *Id*. at 1727. As the Supreme Court has elsewhere explained, a "warrant is a judicial mandate to an officer to . . . make an arrest, and the officer has a sworn duty to carry out its provisions." *Strieff*, 579 U.S. at 240. In other words, the NYPD did not have "discretion" not to arrest Plaintiff when there was a warrant for his arrest, and he advertised the exact date, time, and place that he would be available for police to effectuate his arrest. *Nieves*, 139 S. Ct. at 1727.

Indeed, perhaps tellingly, Plaintiff does not allege or argue that police officers, or even the NYPD Commissioner, exercise discretion not to enforce arrest warrants. Rather, the discretionary decision about which Plaintiff complains is the decision "to run [a] warrant search[.]" AC ¶ 37. Plaintiff's claim, however, is that he was "*arrested* in retaliation for his First Amendment-protected activity." AC ¶ 35. Because Plaintiff fails to plead "the absence of probable cause" for his arrest, and his arrest pursuant to a warrant does not fit the "narrow" exception to "the no-probable-cause requirement," Plaintiff fails to state a claim. *Nieves*, 139 S. Ct. at 1727.

C. **Plaintiff Fails To State a Claim for Prior Restraint.**

Plaintiff argues that his arrest "before the bicycle ride started" in April 2019 constituted a prior restraint on his speech in violation of the First Amendment. AC ¶¶ 30, 35; *see* Pl. Opp. 13–14. Plaintiff is incorrect.

There are two paradigmatic forms of prior restraints. The first is a government edict "forbidding certain communications when issued in advance of the time that such communications are to occur." *Perry v. McDonald*, 280 F.3d 159, 171 (2d Cir. 2001) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The second paradigmatic prior restraint is a licensing regime that gives state officials "unfettered discretion" to impinge on speech. *Perry*, 280 F.3d at 171; *see City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757 (1988). Neither of these paradigms applies to the circumstances here.

In some circumstances, arrests might function as a prior restraint. *See Metro. Council, Inc. v. Safir*, 99 F. Supp. 2d 438, 448 (S.D.N.Y. 2000) (collecting cases). However, there is no authority for the proposition that police officers cannot effectuate an arrest pursuant to a facially valid, *pre-existing* warrant when or before the subject of that warrant plans to engage in unrelated speech. Plaintiff does not disagree. *See* Pl. Opp. 13–14.

Rather, Plaintiff simply reasserts his arguments that the warrant was invalid, and, thus, he "has overcome the presumption of probable cause" for his arrest. Pl. Opp. at 13. The Court rejects those arguments for the reasons detailed above. As such, the Court dismisses Plaintiff's inapposite prior restraint claim.

### D. Plaintiff Fails To State an Equal Protection Claim.

To state an Equal Protection claim based on selective enforcement, a plaintiff must allege: "(1) the plaintiff, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Brown v. City of Syracuse*, 673 F.3d 141, 151–52 (2d Cir. 2012) (brackets, internal quotation marks, and citation omitted).

Plaintiff alleges that participants in the memorial ride "were majority non-white" and were treated differently from the mostly "white" participants in other "group bicycle rides," such as the "monthly Central Park Moonlight ride." AC ¶¶ 25, 42. Specifically, Plaintiff alleges that would-be participants in the memorial ride "were ticketed for not having bells on their bicycles, even though they were not riding them at the time." AC ¶ 38. Plaintiff further alleges that "Former Commissioner O'Neill later admitted that the bike bell enforcement was a 'tool' to prevent the ride from occurring." AC ¶ 41.

Plaintiff lacks standing to assert an Equal Protection claim on behalf of "other people" who "were ticketed for not having bells on their bicycles." AC ¶ 38; *see Keepers, Inc. v. City of Milford*, 807 F.3d 24, 40 (2d Cir. 2015) (litigants ordinarily must assert their own constitutional rights and lack standing to assert the rights of third parties). Plaintiff does not allege that *he* was ticketed for not having a bell on his bicycle. Rather, Plaintiff was "arrested pursuant to a warrant for failing to appear on an open container summons." AC ¶ 32. Plaintiff does not allege that anyone similarly situated to him was not arrested. He does not allege, for example, that a white participant in a Central Park Moonlight ride was not arrested despite the existence of a warrant for his arrest. As such, Plaintiff fails to state a claim for selective enforcement against him or other violation of his own right to equal protection of the laws.

### E. Plaintiff Fails To State a Claim for Denial of his Right to a Fair Trial.

To state a claim for denial of the right to a fair trial based on the fabrication of evidence, a plaintiff must allege that (1) an investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result. *Ashley*, 992 F.3d at 139. The plaintiff has a "pleading obligation to present more than conclusory allegations that the officers fabricated"

12

the information in question. *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023). Here, Plaintiff has not met that obligation.

Plaintiff alleges one single fact in connection with his conclusory assertion that the Warrant and Summons were fabricated. He alleges only that he "never received a summons for an open container in the Bronx in 2015." AC ¶ 34. Accepting as true the allegation that Plaintiff did not receive the summons, that fact by itself, without more, simply does not support a reasonable inference that officers fabricated the summons or the information in it. *See Ofori-Tenkorang*, 460 F.3d at 298. At most, Plaintiff raises the "sheer possibility" of unlawful police conduct, which is not enough to state a claim. *Twombly*, 550 U.S. at 570.

### F. Plaintiff Fails To State a Claim for Malicious Abuse of Process.

Plaintiff also asserts a claim for malicious abuse of process. *See* AC ¶¶ 66–71. To state a claim for malicious abuse of process, a plaintiff must allege that the defendant (1) employed regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm *without excuse or justification*, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (emphasis added). While the similar tort of "malicious prosecution concerns the improper issuance of process, the gist of [malicious] abuse of process is the improper use of process after it is regularly issued." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (brackets, internal quotation marks, and citation omitted).

Here, as discussed at length above, Plaintiff contends that the warrant for his arrest was not "regularly issued," *id.*, but fabricated or based on deliberately false information, AC ¶ 33. Since the Court is required to draw all reasonable inferences in Plaintiff's favor, the Court infers that Plaintiff intends to plead in the alternative that Defendant acted on a valid warrant for an improper

purpose. *See Ofori-Tenkorang*, 460 F.3d at 298. However, if officers arrested Plaintiff pursuant to a valid warrant, Plaintiff cannot maintain, as he must to state a claim, that there was no "justification" for his arrest. *Savino*, 331 F.3d at 76; *see Strieff*, 579 U.S. at 240. Accordingly, Plaintiff fails to state a claim for malicious abuse of process.

### G. Plaintiff Fails To State a Claim for Municipal Liability.

Finally, Plaintiff asserts a Section 1983 claim against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). Here, as explained above, Plaintiff fails to plausibly allege any deprivation of a constitutional right. Accordingly, his *Monell* claim is dismissed. *Agosto*, 982 F.3d at 97.

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss [ECF No. 19] is GRANTED. The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 19 and to close this case.

**SO ORDERED.**

Date: **March 29, 2024**        _____
         **New York, NY**               **MARY KAY VYSKOCIL**
                                        **United States District Judge**